[No. D007602. Fourth Dist., Div. One. Oct. 25, 1988.]

COUNTY OF IMPERIAL, Plaintiff, v.
JOHN L. FARMER, Defendant;
NANCY LOVETT, Real Party in Interest and Respondent.
JOHN J. SINCLAIR, Appellant.

**COUNSEL**

John J. Sinclair, in pro. per., for Appellant.

David Marcus for Real Party in Interest and Respondent.

**OPINION**

**WORK, Acting P. J.**—In this novel scenario, we reverse an order imposing monetary sanctions against Washington attorney John J. Sinclair, adjunct

to a 1976 paternity/support action filed by Imperial County against John L. Farmer, an action to which Sinclair was neither a party nor attorney of record. The sanctions were purportedly based on Sinclair's legal services provided to Farmer and his wife in a 1987 custody action filed in the State of Washington under the Uniform Child Custody Jurisdiction Act. Sinclair asserts the trial court failed to comply with the requirements of Code of Civil Procedure[1] section 128.5 and lacked the authority to impose sanctions against him because he resided in another state, was not a party to the Imperial County action, was not an attorney of record and had never participated in the California action. Further, he contends insofar as the sanctions purport to be based on the Washington action being frivolous within the meaning of section 128.5, subdivision (b)(2), there is no evidence to support that finding.

We conclude the trial court had no supervisory and management authority to impose section 128.5 sanctions on one who was neither a party nor an attorney of record to a pending California action. We further hold the court failed to make mandatory findings explaining how Sinclair's conduct in pursuing the Washington petition for custody was frivolous or designed for an improper purpose. Accordingly, we reverse the order imposing sanctions.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 11, 1976, John L. Farmer entered into a stipulated judgment and order, declaring his paternity of John L. Farmer, Jr. (born May 20, 1976), ordering child support of $51 per month and awarding custody of the minor to the mother, subject to his reasonable visitation rights. In 1987, the minor and his stepsister were sent by their mother, Nancy Lovett, to the residence of Farmer and his wife in Washington for six weeks during summer vacation. Shortly thereafter, the Farmers contacted Sinclair because they believed returning the children to California would endanger them, claiming their mother provided no supervision and abused alcohol and drugs. Sinclair filed a Washington action on the Farmers' behalf for custody of both Farmer's minor son and the stepsister pursuant to the provisions of the Uniform Child Custody Jurisdiction Act, Revised Code of Washington section 26.27.030, subdivision (1)(b) and (c) and *Ellis* v. *Nickerson* (1979) 24 Wn.App. 901 [604 P.2d 518], which permit a court of the State of Washington to modify a foreign child custody decree under certain circumstances for the best interests of the child. The Washington court issued a temporary restraining order pending a hearing on the merits. However, the stepsister had already been returned to California. After Lovett retained Washington

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

counsel to represent her, the custody petition was dismissed. The Washington court ordered the minor son returned to California and denied Lovett's request for attorney's fees. The court found there existed a prior California custody decree; the child's home state was California; and there was insufficient evidence supporting the jurisdictional elements required by Revised Code of Washington section 26.27.030, subdivision (1)(b) and (c).

Essentially simultaneously, Lovett retained California counsel who reactivated the original 1976 paternity/support action by noticing a motion requesting child custody, visitation, child support, return of the minor children, imposition of section 128.5 sanctions and attorney's fees and costs. Sinclair received mail notice of the California proceedings. The underlying 1976 action referred to in the noticed motion was County of Imperial v. John L. Farmer with Nancy Lovett being the real party in interest. The motion, however, further notices nonparties, Farmer's wife and Sinclair, and requests the imposition of sanctions against both the Farmers and Sinclair. The trial court imposed sanctions of $1,000 plus costs ($29) only against Sinclair, finding in pertinent part: "JOHN FARMER, Jr. is a resident of the State of California, and is the subject of the instant action. JOHN FARMER, Jr. was sent to the State of Washington to spend the summer with his father. JOHN J. SINCLAIR filed an action in Washington to determine custody of that child, and a child not of this union. On his advice, the child JOHN FARMER, Jr. was not returned the Real Party in Interest, and it was necessary for the Real Party in Interest to hire counsel in Washington to have the Washington action dismissed. The action was dismissed, and although JOHN J. SINCLAIR, Esq. had been given an opportunity to dismiss the Washington action, was advised that service of his Petition was not proper and that the Petition itself was not in proper form, he insisted on having a hearing, and requiring that the Real Party in Interest hire counsel in Washington. The Washington Petition was dismissed, and the child ordered returned. The child has been returned.

"The Court finds that the filing of the Petition in Washington, and the urging of the Defendant herein and his current Wife to keep the child in Washington, thus requiring the Real Party in Interest to hire counsel in Washington to have the Washington Petition dismissed, were actions which caused an effect in this state within the meaning of *Indiana Insurance Company* v. *Pettigrew* (1981) 115 CA3d 862, 171 CR 770. The Court further finds that by attempting to serve the Real Party in Interest in California and by leaving the documents at her father's house, JOHN J. SINCLAIR, Esq. caused an act to be done in this state which is sufficient to give this state jurisdiction. The Court further finds that the federal case of *Thompson* v. *Thompson* (9 Cir 1986) 798 F2d 1547, may also confer jurisdiction upon this Court, because the parties both resided here prior to the Defendant's moving to Washington, the child was born in California and resides here,

the Judgment is a California Judgment and it was a visitation order which order was interfered with by Attorney Sinclair which was made by this California Court."

Sinclair's motion to vacate the sanction order for lack of in personam and subject matter jurisdiction and the bar of res judicata because the Washington Superior Court on September 1, 1987, had already ruled on the issue of sanctions and attorney's fees, was denied.

### The Trial Court's Apparent Reliance on Section 128.5 as Statutory Authority for Imposing Sanctions Here Was Misplaced

■ We conclude the trial court improperly applied the provisions of section 128.5 in imposing sanctions against Sinclair who was neither a party nor an attorney of record to any action within this state. ■ Further, the trial court failed to state adequate reasons for imposing the sanction or finding the Washington action frivolous within the meaning of section 128.5, subdivision (b)(2).

Section 128.5 provides in pertinent part: "(a) Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. . . . [¶] (b) For purposes of this section: [¶] (1) 'Actions or tactics' include, but are not limited to, the making or opposing of motions or the filing and service of a complaint or cross-complaint. . . . [¶] (2) 'Frivolous' means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party. [¶] (c) Expenses pursuant to this section shall not be imposed except on notice contained in a party's moving or responding papers; or the court's own motion, after notice and opportunity to be heard. An order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order."

■ In other words, section 128.5 gives the trial court discretion to impose sanctions under narrowly prescribed conditions where the moving party has established "the opposing party's action or tactic was (1) totally and completely without merit, measured by the objective, 'reasonable attorney' standard, or (2) motivated solely by an intention to harass or cause unnecessary delay, measured by a subjective standard. [Citations.] Whether sanctions are warranted depends on an evaluation of all the circumstances surrounding the questioned action. [Citation.]" (*Weisman* v. *Bower* (1987) 193 Cal.App.3d 1231, 1236 [238 Cal.Rptr. 756], fn. omitted.) Because of the broad power conferred upon the courts in this matter, the issue before us is whether *the trial court abused its discretion in imposing the sanctions or,*

stated otherwise, whether the trial court's action was authorized by the spirit and purpose of section 128.5. (*Luke* v. *Baldwin-United Corp.* (1985) 167 Cal.App.3d 664, 668 [213 Cal.Rptr. 654].)

Section 128.5 was enacted in 1981, accompanied by an uncodified section stating: "It is the intent of this legislation to broaden the powers of trial courts to manage their calendars and provide for the expeditious processing of civil actions by authorizing monetary sanctions now not presently authorized by the interpretation of the law in *Baugess* v. *Paine* (1978), 22 Cal.3d 626 [*sic*]." (Stats. 1981, ch. 762, § 2, p. 2968.) Presented with plaintiff's attorney's conduct which caused a mistrial and the trial court's ordering that attorney to pay $700 to defendant's counsel as a sanction, the Supreme Court in *Bauguess* v. *Paine* (1978) 22 Cal.3d 626 [150 Cal.Rptr. 461, 586 P.2d 942], reversed and held the award of such attorney's fees was not within the equitable or supervisory power of the trial court, and was not authorized by any statute. (*Id.* at pp. 635-639.) Consequently, it was the intent of the Legislature to remedy this lack of statutory authority of trial courts to manage civil litigation and proceedings conducted before them. (*Lesser* v. *Huntington Harbor Corp.* (1985) 173 Cal.App.3d 922, 928 [219 Cal.Rptr. 562]; *Ellis* v. *Roshei Corp.* (1983) 143 Cal.App.3d 642, 648 [192 Cal.Rptr. 57].) Focusing on the trial court's supervisory power of managing the proceedings and cases before it, the court in *Mungo* v. *UTA French Airlines* (1985) 166 Cal.App.3d 327, 333 [212 Cal.Rptr. 369], stated: " 'A trial court is empowered to exercise its supervisory power in such a manner as to provide for the orderly conduct of the court's business and to "guard against inept procedures and unnecessary indulgences which would tend to hinder, hamper or delay the conduct and dispatch of its proceedings." ' (*Ellis* v. *Roshei Corp.* (1983) 143 Cal.App.3d 642, 648-649, quoting *People* v. *Mattson* (1959) 51 Cal.2d 777, 792 [336 P.2d 937].)" (Accord *Dwyer* v. *Crocker National Bank* (1987) 194 Cal.App.3d 1418, 1434 [240 Cal.Rptr. 297].)

Accordingly, the "reach" of section 128.5 is confined to actions and conduct within proceedings conducted in the trial courts of this State, "enabl[ing] a trial court to impose sanctions against an attorney, a client/party, or both, and in favor of another, opposing party to pay reasonable expenses, including attorney's fees, which another, opposing party incurs because of frivolous or dilatory bad-faith actions or tactics." (*Rabbitt* v. *Vincente* (1987) 195 Cal.App.3d 170, 174 [240 Cal.Rptr. 524].) The statute does not authorize imposing sanctions against an attorney of a nonparty, nor does it contemplate imposing sanctions on an attorney who is not of record and is simply associated to a party through separate litigation pursued entirely in a foreign jurisdiction. (See *ibid.*)

Here, the trial court violated both the express and implied terms of section 128.5 and case precedent construing that provision by attempting to

apply it to Sinclair, who had never been a party to the California paternity/support action, had never been an attorney of record in any California action and had merely provided legal services to a party within a custody petition in Washington. He filed no action in California and thus was not subject to sanctions under section 128.5 for conduct interfering with the orderly dispatch of litigation proceedings within the supervisory power of the courts in this State.

▪ Moreover, the trial court did not comply with the mandate of section 128.5 requiring it to state in writing and in detail the conduct or circumstances justifying sanctions. The court was required to state the specific circumstances giving rise to the award of attorney's fees and articulate with particularity the basis for its finding Sinclair's conduct reflected tactics or actions performed in bad faith and were frivolous or designed to harass or cause unnecessary delay. (*Fegles* v. *Kraft* (1985) 168 Cal.App.3d 812, 816 [214 Cal.Rptr. 380]; *Garcia* v. *Sterling* (1985) 176 Cal.App.3d 17, 23 [221 Cal.Rptr. 349].) "An order bereft of this statement of reasons cannot stand." (*Hearst* v. *Ferrante* (1987) 189 Cal.App.3d 201, 204 [234 Cal.Rptr. 385].) Here, although the trial court made findings summarizing the factual and procedural background of the case, the trial court neither expressly found (nor apparently investigated) whether the Washington petition for custody was frivolous under Washington law. ▪▪▪▪
▪ Indeed, an inference to the contrary may be drawn by the action of the Washington Superior Court, which refused to award attorney's fees to Lovett in the Washington action.[2] Presumably, under the doctrine of collateral estoppel, the Washington determination regarding attorney's fees should be entitled to res judicata effect in California, preventing the issuance of this order for sanctions or attorney's fees.[3]

---

[2] We note there is a typographical/clerical error in the Washington order dismissing the petition for custody and quashing the restraining order where it denies the "petitioner's request for attorney's fees" and designates both Farmer's and Lovett's counsel as attorneys for "petitioner." However, our independent review of the superior court file shows it was Lovett's counsel who requested "reasonable attorney's fees in the amount of $1,000.00" in her motion to quash the restraining order.

[3] "Under the collateral estoppel aspect of res judicata, the litigation and determination of an issue by final judgment is conclusive upon the parties or their privies in a subsequent suit on a different cause of action. [Citation.] A party is collaterally estopped from relitigating an issue previously adjudicated if: (1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit. [Citation.] 'Collateral estoppel bars relitigation of an issue decided at a previous hearing only if " 'the issue necessarily decided at the previous [proceeding] is *identical* to the one which is sought to be relitigated . . . .' " [Citation.]' [Citation.] 'If "anything is left to conjecture as to what was necessarily involved and decided" there can be no collateral estoppel [citations]. . . . "[I]t must appear . . . that the precise question was raised and determined in the former suit . . . ." ' [Citation.]" (*Southwell* v. *Mallery, Stern &*

In summary, assuming but not granting the trial court had jurisdiction over Sinclair, it was without statutory authority to sanction his conduct in bringing the Washington petition for custody. He was neither a party nor an attorney of record in an action pending in this state and had not subjected himself to the supervisory and management jurisdiction of the Imperial County court so as to authorize imposition of sanctions pursuant to section 128.5.

■ Moreover, even if section 128.5 had applied to Sinclair, the authority of the trial court to personally sanction an attorney should be employed with the greatest of care, taking into consideration not only the information that counsel received from his clients and should have obtained through independent investigation, but also counsel's personal motives, if any, for pursuing the action, the nature of the action and the temporal pressures and limitations accompanying it before determining the action was brought solely to harass. Alternatively, under the circumstances of this case, where the action is filed under a uniform act in another state, it must take judicial notice of the case precedent from that foreign jurisdiction construing the act before determining whether the action was in fact frivolous and without merit under the cited objective, "reasonable attorney" standard. Only after the foregoing has been performed and capsulized in a detailed statement of reasons can an order imposing sanctions pursuant to section 128.5 survive appellate scrutiny and review. Here, the proper forum for this claim was in the Washington court where the action was filed, where the claim could be properly analyzed within the context of Washington law, and where it apparently already had been made and rejected.

## DISPOSITION[4]

The order is reversed.

Todd, J., and Benke, J., concurred.

---

*Warford* (1987) 194 Cal.App.3d 140, 144 [239 Cal.Rptr. 371]; see also *Hirst* v. *State of Cal.* (9th Cir. 1985) 770 F.2d 776, 778.)

[4] In light of our disposition, we do not address and resolve the remaining contentions regarding whether the trial court had personal jurisdiction over Sinclair on the basis of mailing a summons and petition filed in another state for service on a California resident; whether the Washington decision precluded the issuance of the contested order for sanctions or attorney's fees under the doctrines of res judicata and collateral estoppel; and whether Lovett was a party to the original paternity/support action allowing her to file the motion for sanctions and attorney's fees.